IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DAVID L. ALEXANDER,            )
                               )
          Plaintiff,           )
                               )
     v.                        )    1:14CV503
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of Social  )
Security,                      )
                               )
          Defendant.           )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, David L. Alexander, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 8, 10). For the reasons that follow, the Court should enter judgment for Defendant.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on October 12, 2011, alleging a disability onset date of August 2, 2005. (Tr. 121-27.) Upon denial of that application initially (Tr. 50-58, 67-70) and on reconsideration (Tr. 59-66, 75-82), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). Plaintiff, his

attorney, and a vocational expert ("VE") attended the hearing. (Tr. 24-49.) By decision dated November 27, 2013, the ALJ determined that Plaintiff did not qualify as disabled under the Act. (Tr. 11-23.) On April 22, 2014, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] last met the insured status requirements of the [] Act on December 31, 2010.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of August 2, 2005 through his date last insured of December 31, 2010.
>
> 3. Through the date last insured, [Plaintiff] had the following severe impairments: cervical degenerative disc disease, osteoarthritis, residual symptoms of a hernia, and diminished hearing.
>
> . . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . . .
>
> 5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except that he must be allowed to alternate between sitting and standing no more often than two times per hour to relieve pain or discomfort but remaining on task. In addition, [Plaintiff] is limited to only occasional climbing, stooping, and kneeling, and to occasional use of his left (nondominant) hand for gross and fine manipulation. Furthermore, he must avoid concentrated exposure to noise and to fumes, odors, dust,

poor ventilation and other pulmonary irritants. Finally, because of the side effects of his narcotic pain medications, [Plaintiff] is restricted to performing simple, routine, repetitive work.

. . . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . . .

10. Through the date[] last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . . .

11. [Plaintiff] was not under a disability, as defined in the [] Act, at any time from August 2, 2005, the alleged onset date, through December 31, 2010, the date last insured.

(Tr. 16-23 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). In this case, Plaintiff has not shown entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,

3

the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before

4

[the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. . . . Supplemental Security Income . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

### B. Assignment of Error

In Plaintiff's sole assignment of error, he faults the ALJ for "failing to assign [] controlling weight" to the opinions of Plaintiff's treating physician, Dr. Byron J. Hoffman. (Docket Entry 9 at 6.) More specifically, Plaintiff disputes the ALJ's assertions that Dr. Hoffman "merely completed a 'fill-in-the-blanks' form[,] . . . did not adequately explain his rationale for specific limitations," and offered his opinions after Plaintiff's date last insured. (Id. at 5 (citing Tr. 21); see also Tr. 571-76 (Dr. Hoffman's May 30, 2013 medical source statement).) According to Plaintiff, Dr. Hoffman began treating Plaintiff in June of 2002, "far prior to the date last insured," and "submitted another statement clarifying the treatment he [had] provided" to Plaintiff and "Plaintiff's capacities" since 2002. (Id.; see also Tr. 582-83 (Dr. Hoffman's February 28, 2014 letter).) Further, Plaintiff urges that Dr. Hoffman's opinions harmonize with those of treating physicians, Dr. Albert K. Bartko, III, and Dr. Henry J. Pool, both of whom issued opinions finding Plaintiff disabled. (See id. at 6 (citing Tr. 480 (Dr. Bartko's disability opinion); see also Tr. 461, 469 (Dr. Pool's disability opinions).) Plaintiff maintains that the ALJ's error holds significance, because Dr. Hoffman's restrictions "would limit [Plaintiff] to hours below the sit/stand threshold for light work." (Id. (citing Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work –

8

The Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *5-6 (1983)).) Plaintiff's arguments on these points lack merit.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 404.1527(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. See 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).

9

In this case, Dr. Hoffman completed a form on May 30, 2013, entitled, "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" ("MSS"), on which he opined that Plaintiff could occasionally lift and carry no more than ten pounds, sit for one hour at a time for a total of eight hours in a work day, stand for 30 minutes at a time for three hours in total, and walk for five minutes without a break and for a total of one hour. (See Tr. 571-72.) In addition, Dr. Hoffman found Plaintiff capable of only occasional overhead reaching, pushing, pulling, and operation of foot controls, and no stooping, kneeling, or crouching. (See Tr. 573, 575.) Regarding daily activities, Dr. Hoffman believed Plaintiff incapable of shopping or walking one block at a reasonable pace on rough or uneven surfaces. (See Tr. 576.)

The ALJ discussed Dr. Hoffman's opinions in detail, and then assessed them as follows:

> Dr. Hoffman has been [Plaintiff's] primary care physician for years, and his opinions should not be taken lightly. However, . . . [i]n this case, [Dr. Hoffman] merely completed a 'fill-in-the-blanks' form and did not adequately explain his rationale for specific limitations. For example, there is no explanation for [Plaintiff's] limitations on standing and walking. Presumably, these are because of [Plaintiff's] lower extremity impairments, which do not support that level of limitation prior to his date last insured. There is also no explanation for the lifting and carrying limits indicated. Moreover, [Dr. Hoffman] indicates [Plaintiff] is unable to perform activities such as shopping, but [Plaintiff] indicated in November 2011 that he was engaging in a wide variety of activities of daily living including shopping. Finally, the limitations indicated are not consistent with the other substantial evidence in the case record, including [Dr. Hoffman's] own clinical

10

> notes. For these reasons, Dr. Hoffman's opinion is given only partial weight.

(Tr. 21 (internal citations omitted).) The ALJ's evaluation of Dr. Hoffman's opinions comports with the above-cited regulations and Craig.

First, the ALJ did not discount Dr. Hoffman's opinions because he completed the MSS after the expiration of Plaintiff's insured status. (See Tr. 21.) The ALJ included the observation that, "[Dr.] Hoffman . . . did not offer an opinion concerning [Plaintiff's] [RFC] prior to his date last insured," in the paragraph in which the ALJ merely described the substance of Dr. Hoffman's MSS, rather than in the following paragraph in which the ALJ provided reasons for discounting Dr. Hoffman's opinions. (Id.) Under such circumstances, the Court should interpret the ALJ's statement as merely placing the MSS in its temporal context, rather than an attempt by the ALJ to discredit Dr. Hoffman's limitations because he failed to relate them back to the time prior to Plaintiff's date last insured.[5]

Second, substantial evidence supports the ALJ's conclusion that Dr. Hoffman "merely completed a 'fill-in-the-blanks' form and did not adequately explain his rationale for specific limitations." (Id.) Dr. Hoffman's most significant restrictions for Plaintiff pertain to lifting/carrying (maximum of ten pounds occasionally),

---

[5] Arguably, Dr. Hoffman did offer a retrospective opinion, as he indicated that some of Plaintiff's limitations began as far back as 2001 when Plaintiff had his first cervical fusion. (See Tr. 576.)

standing (maximum of three hours), and walking (maximum of one hour); however, Dr. Hoffman failed to supply any "medical or clinical findings" to support his limitations in the corresponding spaces to provide such information on the MSS form. (Tr. 571, 572.) Dr. Hoffman's failure to provide a supporting rationale for the walking and standing limitations holds significance, because Plaintiff reported (and the record reflects) that his significant lower extremity problems began in 2011, after the date last insured. (See Tr. 176 (Plaintiff's response on pain questionnaire indicating leg pain began in 2011), 286 (vascular surgeon's record dated September 29, 2011, indicating Plaintiff's severe claudication symptoms began in April 2011), 427 (sole diagnostic test of lumbar spine in record dated May 26, 2011, reflecting disc protrusion, stenosis, disc bulge, and facet disease).

Third, the ALJ did not err by concluding that Dr. Hoffman's opinions lacked consistency with "the other substantial evidence in the case record." (Tr. 21.) Plaintiff's reliance on the disability opinions of Drs. Bartko and Pool as evidence supporting Dr. Hoffman's opinions (see Docket Entry 9 at 6 (citing Tr. 480; see also Tr. 461, 469) falls short. Dr. Bartko's statement that Plaintiff "remains disabled" (Tr. 480) constitutes an issue reserved to the Commissioner, see 20 C.F.R. § 404.1527(e). Further, although Dr. Bartko indicated that he would complete a disability form for Plaintiff (see id.), such form does not appear

12

in the record, as recognized by the ALJ (see Tr. 20 ("Notably, Dr. Bartko never offered an opinion concerning [Plaintiff's] [RFC]")). Moreover, the ALJ discounted Dr. Pool's December 1, 2005 work certificate finding Plaintiff "unable to work in any capacity" on the basis that Dr. Pool issued the certificate as "a precaution pending further workup." (Tr. 20 (citing Tr. 469).) Similarly, the ALJ rejected Dr. Pool's June 20, 2006 certificate finding Plaintiff "unable to work in any capacity" for six weeks because the certificate was "temporary" (Tr. 21) and reflected Dr. Pool's "unspecified 'activity restrictions,'" given "in the hope [Plaintiff's] condition would improve" (Tr. 20 (citing Tr. 461)). The ALJ adequately explained her rejection of these opinions and, notably, Plaintiff did not challenge the ALJ's rationale in that regard. (See Docket Entry 9 at 2-7.)

Finally, Plaintiff asserts that Dr. Hoffman's February 2014 "clarifying" statement (id. at 5 (citing Tr. 582)) demonstrated that Plaintiff's peripheral vascular disease "severely restricted his activities prior to the date last insured" and "therefore conflict[ed] with the ALJ's [RFC] and finding at step two" deeming Plaintiff's peripheral vascular disease non-severe (id. at 6 (citing Tr. 17, 18)). Plaintiff's assertion overlooks the fact that Dr. Hoffman dated his letter February 28, 2014 (see Tr. 582), approximately three months after the ALJ's decision in this case (see Tr. 23). Indeed, Plaintiff submitted Dr. Hoffman's letter to

13

the Appeal Council (see Tr. 23), and the Appeals Council incorporated the letter into the administrative record (see Tr. 4). Under such circumstances, Plaintiff must show that Dr. Hoffman's February 28, 2014 letter constitutes "new and material evidence relating to the period on or before the date of the ALJ decision." Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 95 (4th Cir. 1991) (emphasis added). "Evidence is new within the meaning of [the Commissioner's regulations] if it is not duplicative or cumulative." Id. at 95-96; see generally Associate Comm'r of Hearings and Appeals, Soc. Sec. Admin., Pub. No. 70-074, Hearings, Appeals, Litig., and Law (LEX) Manual, § I-3-306(A) (1990). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96 (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)).

Here, however, Plaintiff has neither made any argument that Dr. Hoffman's February 28, 2014 letter qualifies as either "new" or "material," nor otherwise argued that such evidence warrants remand under sentence six of 42 U.S.C. § 405(g), which empowers the Court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." (See Docket Entry 9 at 2-7.) In the absence of argument from Plaintiff on these

14

matters, the Court need not undertake an analysis of Dr. Hoffman's letter under Wilkins. See, e.g., Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n. 4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Nickelson v. Astrue, No. 1:07CV783, 2009 WL 2243626, at *2 n. 1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the court will not address them.").

In sum, substantial evidence supports the ALJ's decision to afford Dr. Hoffman's opinions "partial weight" (Tr. 21).

### III. CONCLUSION

Plaintiff's assignment of error lacks merit.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 8) be denied, and that Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) be granted.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 24, 2015